```
          IN THE UNITED STATES DISTRICT COURT
        FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

| | | |
|---|---|---|
| JACQUELINE N., et al. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE SCHOOL DISTRICT OF | : | |
| PHILADELPHIA, et al. | | NO. 19-3748 |

MEMORANDUM

Bartle, J.                                            January 31, 2020

        Plaintiffs are: (1) parents who bring this action on behalf of seven minor children with disabilities ("plaintiff parents"); and (2) two corporations that provide services to those children ("plaintiff providers"). Plaintiffs contend that the defendant the School District of Philadelphia has not paid amounts due under the written settlement agreements which resulted from actions against it under the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. §§ 1400, et seq. Defendant Kim Harris is the School District's Director of Financial Management. Plaintiffs allege claims under the IDEA, other federal statutes, and Pennsylvania law as a result of defendants' violation of the settlement agreements.[1]

        Before the court is the defendants' motion to dismiss Counts III, IV, V, and VI of the First Amended Complaint and to dismiss the claim for attorneys fees in Count I. Defendants

---

1. The plaintiffs have also named as defendants Does 1-9 at the same address as defendants the School District and Harris.

maintain that only the breach of contract claims in Counts I and II remain viable.

I

We accept as true at this state of the action all well-pleaded facts.

Plaintiffs are the parents of seven disabled minor children and plaintiff providers Empirical Pediatric Therapy, Inc. ("Empirical") and Amy McGinnis Behavioral Consulting, Inc. ("Behavioral Consulting") which provide specialized disability services to the children. The parents of each of the seven children previously filed complaints with the Office for Dispute Resolution of the School District of Philadelphia. Plaintiffs claimed that the School District denied their children a free appropriate education under Section 504 of the Rehabilitation Act of 1973. See 42 U.S.C. §§ 12101-213, et seq.

Those complaints resulted in written settlement agreements between the School District of Philadelphia and each parent. The School District agreed to pay for a number of hours of compensatory education for each of the seven children at the rate of $60 per hour. Each of the parents secured the services of either Empirical or Behavioral Consulting. The School District either paid for the services directly or reimbursed the parents.

After a time, defendant Kim Karris, informed the plaintiff providers that the School District would begin to require them to submit certain documentation before making payments to them under the settlement agreements.[2] Specifically, the School District required descriptive notes of the children's therapy sessions as well as the times of those sessions. The School District also required detailed documentation of all the services rendered by the parent providers to each child under the settlement agreements. Plaintiffs state these documents are not required as a condition of payment under the settlement agreements, that the plaintiff providers do not take descriptive notes of therapy sessions, and that requiring them to do so would increase the cost and reduce the effectiveness of their services.

Plaintiffs allege that the School District began to withhold payments under the settlement agreement, including payments for services already rendered. Plaintiffs allege also that the School District continues to without payments, and,

---

2. Empirical provides behavioral services, occupational therapy, and speech and language therapy to children with disabilities. Behavioral Consulting conducts evaluations related to behavioral programming for children with disabilities. Both are frequently retained by parents to provide compensatory educational services paid for by the School District of Philadelphia.

after several inquiries, provides inconsistent and contradictory reasons for doing so.

II

Defendants argue that plaintiffs have not stated claims for relief for retaliation and discrimination in violation of the Americans with Disabilities Act ("ADA") in Count III and retaliation and discrimination in violation of Section 504 of the Rehabilitation Act of 1973 in Count IV.

The ADA provides in relevant part:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132.

Section 504 reads in relevant part:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a).

Both the ADA and § 504 contain anti-retaliation provisions. See 42 U.S.C. § 12203(a); 34 C.F.R. § 100.7(e). The same standards generally govern the analysis under both statutes. To establish a claim for retaliation, a plaintiff

must prove: (1) that he or she engaged in protected activity; (2) that the defendant's retaliatory conduct would deter a person of ordinary firmness from exercising his or her rights; and (3) that there is a causal connection between the plaintiff's protected activity and the defendant's retaliatory action. Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

The court further explained the temporal requirement necessary to satisfy the casual connection:

> To establish the requisite causal connection a plaintiff usually must prove either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link.

Id. at 267.

The Court of Appeals has held that, though not a bright line rule, a three month gap between the act or event in question and the retaliation is too long to establish the temporal proximate for causation. LeBoon v. Lancaster Jewish Community Ass'n, 503 F.3d 217, 233 (3d Cir. 2007) cert. denied 553 U.S. 1004 (2008). According to the allegations in the amended complaint, time lapses of at least three months and up to a year occurred between the filing of the various plaintiffs' due process complaints and defendants' stopping the payment of money allegedly due under the settlement agreements. Moreover,

-5-

plaintiffs have not alleged facts which establish a pattern of antagonism between the time they filed their complaints and when defendants stopped paying under the settlement agreements. Plaintiffs thus have not pleaded the facts necessary for a retaliation claim. Accordingly, such claims asserted in Counts III and IV under the ADA and § 504 will be dismissed.

Defendants also seek to dismiss plaintiffs' discrimination claims in Counts III and IV under the ADA and § 504. As noted above, both statutes have similar provisions against discrimination. See 42 U.S.C. § 12132; 29 U.S.C. § 794(a). To prove such a claim under either statute, a plaintiff must demonstrate that: (1) plaintiff children have disabilities; (2) they were otherwise qualified to participate in a school program; and (3) they were denied the benefits of the program or were otherwise subject to discrimination because of their disability. Chambers ex rel. Chambers v. Sch. Dist. of Phila. Bd. of Educ., 587 F.3d 176, 189 (3d Cir. 2009). After a careful review of the amended complaint, we find that plaintiffs have stated plausible claims for discrimination which have accrued since the due process complaints were settled. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 556-67 (2007).

Defendants further argue that plaintiff parents and plaintiff providers do not have standing to assert these discrimination claims. We are not convinced. First, our Court

-6-

of Appeals in Doe v. County of Centre, Pa, 242 F.3d 437, 447 (3d Cir. 2001), has recognized that non-disabled persons have a claim for associational discrimination when they are injured or harmed because of their association with the disabled person. These non-disabled persons include parents and those who provided services for disabled persons. Here, the settlement agreements with the School District provide that the School District is obligated to make payments for certain compensatory services for the disabled children. Direct payments are to be made "to vendors of items or providers of professional services, or reimbursement to parent arising from her payment for such items or professional services." The agreements further provide, "Parent hereby agrees to wholly indemnify the District should claims arise from any third party regarding the subject matter of this Agreement." The amended complaint alleges that defendants have not made payments due under the Settlement Agreements. Clearly, the plaintiff parents and plaintiff providers have properly averred they are injured parties and thus have standing to sue the defendants.[3]

---

3. Plaintiffs have stipulated that all references to 20 U.S.C. § 1415 and 42 U.S.C. §§ 1983, 1985 and 1988 are stricken from Counts III and IV of the amended complaint.

III

Defendants also seek to dismiss the claims of the plaintiff providers in Count V, again on the ground that they have not stated a claim for relief. These plaintiffs assert under 42 U.S.C. § 1983 that they have been denied the right to engage in their chosen profession under the due process and equal protective clauses of the Fourteenth Amendment because of defendants' failure to pay them for their services under the Settlement Agreements.

The Fourteenth Amendment does protect the right to engage in one's chosen profession but it does not protect the right to pursue a specific job. Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Culinary Services of Del Valley, Inc. v. Borough of Yardley, 385 Fed. App'x 135, 141 (3d Cir. 2010); Pieknick v. Comm. of Pa., 36 F.3d 1250, 1259 (3d Cir. 1994). Plaintiff providers do allege that the failure to obtain money due from the School District is harming their business. However, any broader allegations that the defendants' conduct interfered with their right to provide services on a broader scale to disabled children generally are simply conclusions and are not plausible. See Twombly, 550 U.S. at 556-57.

Defendants are also correct that the plaintiff providers have not plausibly alleged a constitutional claim of damage to their reputations because of the defendants' failure

to make the payments in question.  A person's reputation alone is not protected by the Due Process Clause of the Fourteenth Amendment.  A person must be able to show a stigma plus, that is, a harm to his or her reputation which also involves a deprivation of some additional right or interest.  See Hill v. Borough of Kutztown, 455 F.3d 225, 236 (3d Cir. 2006).  Even if the failure of the defendants to pay plaintiff providers what is due under the Settlement Agreements implicates that additional right or interest, defendants' failure to pay cannot be said, by any stretch of the imagination, to be conduct designed to harm the reputations of these plaintiffs.  The defendants at the very least must have disseminated a false and defamatory impression of these defendants to the public in connection with its failure to pay.  The amended complaint is devoid of any such allegations.  Id.  What plaintiff providers allege does not give rise to a Fourteenth Amendment violation.[4]  See Twombly, 550 U.S. at 557.

IV

Defendants ask the court to dismiss plaintiffs' claim for declaratory relief in Count VI.  The award of declaratory

---

4.  As a result of our analysis, we need not reach the argument that plaintiffs have no claim under § 1983 against the defendant School District under Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978).

relief is discretionary. State Auto Ins. Co. v. Summy, 234 F.3d 131, 133 (3d Cir. 2002). At the motion to dismiss stage, it is too early for the court to decide this issue. The motion, insofar as it seeks to dismiss this form of relief, is denied without prejudice.

V

Plaintiff parents request attorneys fees in Count I as part of the relief for "Enforcement of Settlement Agreements Reached Pursuant to IDEA Resolution Process."[5] Defendants argue that Count I is a common law breach of contract claim for which counsel fees are not awarded to the prevailing party under state law. The plaintiff parents counter that Congress has authorized the award of counsel fees to them under the IDEA to enforce settlement agreements.

The IDEA allows for a legally binding written agreement when "a resolution is reached to resolve the complaint through the mediation process." See 20 U.S.C. § 1415(e)(2)(F). Such an agreement "is enforceable in any State Court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e)(2)(F)(iii). Section 1415(i)(3)(A)

---

5. The defendants cite J.K. v. Council Rock Sch. Dist., 833 F. Supp. 2d 436, 452 (E.D. Pa. 2011) as "indicat[ing] attorneys' fees should not be awarded for the enforcement of a due process settlement agreement." J.K. makes no such indication.

provides that "[t]he district courts of the United States shall have jurisdiction of actions brought under this section without regard to the amount in controversy." Section 1415(i)(3)(B)(i)(I) allows for the award of attorney's fees "in an action brought under this section . . . to a prevailing party who is the parent of a child with a disability."

Each of the settlement agreements contains language in the "Claim Released" paragraph that "[i]t is expressly understood and mutually agreed that this Agreement is intended to resolve all claims by Parent individually and on behalf of the Student . . . which arise under and pursuant to the Individuals with Disabilities Education Act, 20 U.S.C. § 1400 et seq. ("IDEA"), its implementing regulation, 34 C.F.R. Part 300 . . ."

Four of the settlement agreements include an additional paragraph:

> The parties agree that this Agreement is a
> written Settlement Agreement reached
> pursuant to the Resolution Process under
> 34 C.F.R. § 300.510, is subject to the
> provisions of that regulation and is
> enforceable in either the Philadelphia Court
> of Common Pleas or the United States
> District Court, pursuant to said regulation.

There can be no doubt the settlement agreements have come about as a result of the resolution process referenced in § 1415(e)(2)(F).

We agree that the IDEA authorizes the award of counsel fees to prevailing parents in an action to enforce the written settlement agreements involved here. Count I is a claim under § 1415. It would be odd indeed for Congress to authorize such an award for legal work occurring before a written settlement is signed but not to allow an award thereafter if a breach of the settlement agreement occurs. It is the practical reality that in order to be able to enforce the provisions of the IDEA including any settlement, parents need to be able to secure counsel fees if they prevail. Without the right to recover counsel fees, a parent has won only a pyrrhic victory for a disabled child.